20 P.(2d) 274

## WRIGHT v. HOLLOWAY et ux.

### No. 3701.

Supreme Court of New Mexico.

Feb. 20, 1933.

W. H. Patten, of Lovington, and Fred E. Wilson, of Albuquerque, for appellant.

J. H. Atwood and Tom W. Neal, both of Lovington, and Bledsoe, Crenshaw & Dupree, of Lubbock, Tex., for appellees.

WATSON, Chief Justice.

By the judgment appealed from, the defendant was charged as trustee of a constructive trust, required to convey to plaintiffs certain lands of which he held the legal title, and to account in the sum of $800.

The trial judge found, in substance, that in May, 1927, on foreclosure of a mortgage given by appellees, a special master's deed passed to a Chicago bank, which deed was duly confirmed on May 7th of that year; that on September 18, 1928, the bank conveyed to appellant, for the sum of $6,500; that appellant had made certain oil and gas leases and conveyances of oil and gas royalties, thereby realizing $7,800; that about July, 1928, appellant, being a dealer in oil and gas leases and royalties, had agreed with appellees, who were uneducated and uninformed in such matters, and were ignorant of the true state of their title to the land resulting from the foreclosure and sale, that, for a compensation not to exceed $500, as agent for appellees, he would effect a reconveyance from the Chicago bank by means of moneys to be derived from a sale of gas leases and royalties; and that, in violation of his agreement and duty, he had taken the title to said land in his own name and had refused to convey the same to appellees, or to account to them for the moneys in his hands in excess of the agreed compensation.

Appellant here claims both that the evidence does not support the findings, and that the findings do not support the judgment. Concluding that the judgment must be reversed on the facts, we need not consider the rule of law applicable to the facts found.

■ The theory of the judgment is that a constructive trust arose when appellant, in violation of his agency, took title in his own name. It cannot be questioned that such a fraud must be established by clear and convincing evidence.

In appellant's attack upon the findings, the central fact is one that does not expressly appear therein, but which is necessarily to be implied and is admitted by all. That is, that when the agreement was made, in July of 1928, appellees had lost not only the legal title, but the statutory right of redemption. Though still in possession of the land, they were then strangers to the title.

Another outstanding and unquestioned fact is that appellees furnished no part of the consideration of the purchase. The failure to find that they did is here equivalent to a finding that they did not.

So appellees are under the burden of showing clearly and convincingly the rather improbable circumstance of a broker doing all the work, furnishing all the money, running all the risk, and agreeing to surrender all the profit to one who could neither aid nor impede the enterprise, retaining for himself a mere commission, and that contingent upon success. Such a service could be expected only from a friend or a philanthropist. No one claims that it was undertaken in that spirit. Appellant contends that the law would not enforce such an agreement; but that matter we do not pursue.

The making of the agreement found is readily understandable, however, upon the theory that appellant, when he made it, supposed that appellees had a subsisting right of redemption. In that case they could aid the enterprise and would be necessary participants in it. Appellant says that he did so suppose, having been assured by appellees that such was the fact. Appellees deny the assurance, but admit that they themselves did not then know that the period of redemption had expired. So it is not only an undisputed, but a highly probable, fact, that appellant's promise was made under this misapprehension. We assume the agreement to have been made as found, for as to this we cannot say that the court could not consider the evidence clear and convincing. But we are compelled to conclude that it was made under this false impression as to the title.

We now come to another fact well proven and scarcely disputed. After having made the agreement and after having procured some financial backing or support, appellant called upon appellees for the purpose of looking over the documents and of getting in touch with the purchaser at the foreclosure sale. Together appellant and appellee, Mr. Holloway, went to the county clerk's office to effectuate this purpose, and there, for the first time, each learned that the right of redemption had been lost.

The discovery changed the whole character of the contemplated transaction. Though appellant had previously agreed as found, no reason is given, and we know of none, to prevent appellant from withdrawing then from his agreement, and none to prevent him from pursuing the matter for his own benefit. He says that he did withdraw. To use his own language, "I turned around to Mr. Holloway and said, 'I haven't got any money or any part of it. I aint got the money to buy it, it is all off with us.'"

Such was the natural result of the discovery. So far as concerns the facts, this may be deemed determinative. It would seem that the question may be reduced to this: Does it appear by clear and convincing evidence that the agreement was to survive discovery of the fact formerly misapprehended?

Mr. Holloway does not admit this calling off of the deal, but he does not deny it, either. On direct examination he said that he went to Lovington, to the county clerk's office, with appellant, because the latter wanted a correct description of the land and the address of the bank holding the special master's deed. On cross-examination he admitted, to use his own language, that he "wasn't posted just, as to whether it (redemption) had expired or not, and didn't know." Then:

"Q. In order to make sure of that, you came to the records up here and found that out, did you not, in order to make sure when the equity of redemption did expire, you and Mr. Wright and check on it? A. Yes, sir; we came up here and checked on it. * * *

"Q. But you came in and checked on the records as to when your equity of redemption expired? A. Well, I don't remember that, whether we checked up as to when—I don't think we did. I think we checked up

to see if I was correct about the numbers of the land. * * *

"Q. Now you came to Lovington with Mr. Wright and you came over to the county clerk's office? A. Yes.

"Q. Was that the first you found out that your equity of redemption had expired? A. I don't remember. I don't think—I don't think I had much thought about that equity of redemption one way or the other at that time.

"Q. But that problem was discussed at that time, about the equity of redemption expiring, was it not? A. I don't think so.

"Q. You don't remember? A. I don't remember discussing it at all."

Mr. H. D. Schenk, an abstractor, and apparently disinterested, it being he who searched the records for the parties on the occasion in question, says that he told them both that he found that there had been foreclosure, a sale to the Chicago bank, and that the equity of redemption had expired.

Mr. Holloway testified further, that after the search of the records, Mr. Wright sat on the running board of the car and wrote a letter to the Chicago bank, read it to Holloway, he not having his glasses, asked him what he thought of it, and that he replied, "Well, that sounds all right." He was not asked, however, and did not state anything as to the contents of the letter.

The controlling issue of fact being whether appellant, on the mutual discovery of the true situation respecting the title, call-ed off the negotiations or terminated the contract, we think that appellees fail in their proof. Their evidence directed to the point is merely a failure of recollection. The incident of writing the letter on the running board, in the absence of any statement of its contents, is very slightly, if at all, corroborative. In view of the positive contrary testimony, the partial corroboration, and all the probabilities, we feel constrained to hold that appellee's evidence is neither clear nor convincing.

We conclude therefore that the judgment should be reversed and the cause remanded, with a direction to enter judgment for appellant.

It is so ordered.

SADLER, HUDSPETH, and BICKLEY, JJ., concur.

ZINN, J., did not participate.